UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRITTANY COMPTON,

      Plaintiff,

v.                                                   CASE No. 8:12-CV-809-T-TGW

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

      Defendant.

_____

<u>O R D E R</u>

      The plaintiff in this case seeks judicial review of the denial of

her claim for supplemental security income payments.[2]  Because the decision

of the Commissioner of Social Security fails to address the opinion of a

treating psychiatrist, the decision will be reversed and the matter remanded

for further proceedings.

_____

      [1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of
Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue
as defendant in this action.  <u>See</u> 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

      [2]The parties have consented in this case to the exercise of jurisdiction by a United
States Magistrate Judge (Doc. 15).

I.

The plaintiff, who was twenty years old at the time of the administrative hearing and who completed twelve years of school with a special diploma, has no past relevant work (Tr. 33). She filed a claim for supplemental security income, alleging that she became disabled due to "[l]earning disability, comprehension, eating disorder, anxiety, [and] depression" (Tr. 110). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had a severe impairment of "anxiety disorder with a low IQ" (Tr. 14). The law judge concluded that, with this impairment, the plaintiff can perform medium work except that "[s]he is limited to simple, very repetitive, predictable tasks requiring little initiative in an environment that has limited contact with the public and few changes in the workplace" (Tr. 16). Based upon the testimony of a vocational expert, the law judge determined that the plaintiff could perform jobs that exist in significant numbers in the national economy, such as nut and bolt assembler and wrapping and packing (Tr. 20). The law judge

therefore ruled that the plaintiff was not disabled (Tr. 22).  The plaintiff

sought review from the Appeals Council, and submitted additional evidence

in support of that request.  Nevertheless, the Appeals Council let the decision

of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a

claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which

... has lasted or can be expected to last for a continuous period of not less than

twelve months."   42 U.S.C. 1382c(a)(3)(A).   A "physical or mental

impairment," under the terms of the Social Security Act, is one "that results

from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not

disabled must be upheld if it is supported by substantial evidence. 42 U.S.C.

405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales,

402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not

disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on two grounds. Specifically, the plaintiff contends that the law judge erred by (1) failing to find the plaintiff met Listing 12.05 C regarding mental retardation, and (2) failing to explain why he disregarded the opinion of a treating psychiatrist that the plaintiff met the diagnostic criteria for mental retardation. The latter contention has merit and warrants reversal.[3]

The plaintiff's first challenge is to the law judge's conclusion that she did not meet, or equal, Listing 12.05 C of Appendix 1 for mental retardation (Doc. 23, pp. 5-7). A condition listed in Appendix 1 (20 C.F.R. Part 404, Subpart P, Appendix 1) is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations. <u>Wilkinson o/b/o Wilkinson</u> v. <u>Bowen</u>, 847 F.2d 660, 662

---

[3]In addition, the plaintiff contends that the Appeals Council erred in denying her request for review. In light of the conclusion that the law judge erred, it is unnecessary to address this contention.

(11th Cir. 1987). The plaintiff bears the burden of showing that she meets, or

equals, a listing. <u>McSwain</u> v. <u>Bowen</u>, 814 F.2d 617, 619 (11th Cir. 1987).

Moreover, "when a claimant contends that [s]he has an impairment meeting

the listed impairments entitling h[er] to an adjudication of disability under

regulation 404.1520(d) [or 416.920(d)], [s]he must present specific medical

findings that meet the various tests listed under the description of the

applicable impairment or, if in the alternative [s]he contends that [s]he has an

impairment which is equal to one of the listed impairments, the claimant must

present medical evidence which describes how the impairment has such an

equivalency." <u>Bell</u> v. <u>Bowen</u>, 796 F.2d 1350, 1353 (11th Cir. 1986).

        As indicated, the plaintiff contends that she meets Listing 12.05

C of Appendix 1. That listing states:

> 12.05 *Mental Retardation*:  Mental retardation
> refers to significantly subaverage general
> intellectual functioning with deficits in adaptive
> functioning initially manifested during the
> developmental period; *i.e.*, the evidence
> demonstrates or supports onset of the impairment
> before age 22.
>
> The required level of severity for this disorder is
> met when the requirements in A, B, C, or D are
> satisfied.

. . .

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; ....

The plaintiff predicates her argument that she meets the listing on IQ scores assessed by Dr. Thomas Trimmer, a consultative psychologist. On February 27, 2008, Dr. Trimmer administered the Wechsler Intelligence Scale test, and concluded that the plaintiff had a verbal IQ score of 67, a perceptual IQ score of 72, and a full scale IQ score of 66 (Tr. 200). Dr. Trimmer stated that "[t]he claimant appeared to make a full effort on all test materials presented and the results reported here are considered to be an accurate estimate of her current level of intellectual and achievement functioning" (id.). Dr. Trimmer diagnosed the plaintiff with mild mental retardation, among other things (Tr. 201).

The Commissioner does not dispute that the "[p]laintiff has the requisite IQ scores to meet subparagraph C Listing 12.05" (Doc. 24, p. 5 n.2). Further, the law judge found that the plaintiff had a severe impairment of anxiety disorder (Tr. 14), which would satisfy the Listing 12.05 C criterion

of another "mental impairment imposing an additional and significant work-related limitation of function." Thus, the issue is whether the plaintiff has deficits in adaptive functioning.

In finding that the plaintiff did not meet, or equal, Listing 12.05 C, the law judge did not explain his finding. All he said was that "the claimant's low IQ does not satisfy the criteria of 12.05" (Tr. 15). He did not expressly address the factor of deficits in adaptive functioning. He did, however, discuss the plaintiff's activities, so that arguably he made an implicit finding that there were not deficits in adaptive functioning. It is unnecessary to decide whether the law judge's failure to explain his reasoning for such a finding warrants reversal because the plaintiff's second issue demonstrates reversible error.

The plaintiff complains that the law judge "did not adequately explain why he disregarded the opinion of the treating physician" (Doc. 23, p. 9).[4] In 2007, the plaintiff was referred to Dr. Ashok Komarla at Northside

---

[4]The only treating physician mentioned in the plaintiff's memorandum is Dr. Ashok Komarla. To the extent that the plaintiff meant to argue that the law judge erred with respect to her other treating psychiatrist, Dr. Neil Thierry, that contention was not properly developed in accordance with the scheduling Order (Doc. 14, p. 2) and is deemed abandoned.

Mental Health Center for psychiatric treatment. Dr. Komarla treated the

plaintiff from September 2007, until July 2008, for anxiety and depression

(see Tr. 242, 243-46, 270-71). On May 7, 2008, Dr. Komarla performed a

psychiatric evaluation on the plaintiff (Tr. 243-46). Dr. Komarla's diagnosis

included major depression, moderate without psychotic features; anxiety

disorder, NOS; and probable generalized anxiety disorder (Tr. 246). He

opined that the plaintiff has a "[s]ignificant intellectual impairment and

impairment in at least two areas like communication, self-care, etc., I would

think it is mild mental retardation at this time" (id.). Dr. Komarla assigned

the plaintiff a Global Assessment of Functioning (GAF) score of 35 (id.).[5]

Opinions from treating physicians should be given substantial or

considerable weight unless there is good cause for not giving them such

weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good

cause exists when the treating physician's opinion is not bolstered by the

---

[5]The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 31-40 reflects "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school) (id.).

evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). However, the law judge "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Id.

While Dr. Komarla's opinion does not use the words "deficits in adaptive functioning," his opinion closely tracks the definition of mental retardation set out in the Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 41. Thus, the DSM-IV-TR states that "[t]he essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B)" (id.). Consequently, when Dr. Komarla assessed "impairment in at least two areas like communication, self-care, etc.," he was clearly opining that the plaintiff had deficits in adaptive functioning.

-10-

The law judge, however, did not evaluate Dr. Komarla's opinion that the plaintiff met the criteria for mental retardation. The law judge only mentioned Dr. Komarla in the following respect (Tr. 17):

> On May 7, 2008, the claimant's mother reported to Ashok Komarla, M.D. that they were not going to renew the claimant's medication, Wellbutrin because it was believed to be part of the reason for the claimant's excessive weight gain. Dr. Komarla discussed, at length, continuing the medications, but the medication was not renewed. (Exhibit 8F)

That comment obviously does not explain why Dr. Komarla's opinion that the plaintiff suffers from mental retardation should be disregarded. The failure to provide such an explanation, moreover, compounds the failure to explain why the plaintiff does not meet, or equal, Listing 12.05 C.

The Commissioner provides no justification for this deficiency. Although the Commissioner asserts that Dr. Komarla did not have a treating relationship with the plaintiff (Doc. 24, p. 11), that assertion is clearly wrong. Thus, the record indicates that Dr. Komarla treated the plaintiff on at least four occasions, two of which occurred prior to the pertinent opinion regarding mild mental retardation and deficits in adaptive functioning (see Tr. 242, 243-46, 270-71). Since Dr. Komarla is a treating physician, the law judge was

required to show good cause for not giving his opinion considerable or substantial weight. His failure to do so constitutes reversible error. <u>Lewis</u> v. <u>Callahan</u>, <u>supra</u>.

       The law judge's failure to evaluate Dr. Komarla's opinion not only affects the analysis of Listing 12.05 C, but also the analysis of the plaintiff's residual functional capacity. As indicated, Dr. Komarla opined that the plaintiff had "impairment in at least two areas like communication, self-care, etc." (Tr. 246). In other words, Dr. Komarla was saying that the plaintiff had deficits of adaptive functioning. Such a conclusion could plainly make a critical difference in the plaintiff's ability to perform basic work activities. The law judge, therefore, needed to assess that opinion. This is further reason why the law judge's failure to address Dr. Komarla's opinion is reversible error.

       It is, therefore, upon consideration,

       ORDERED:

       That the decision of the Commissioner of Social Security is hereby REVERSED, and the matter is REMANDED for further proceedings.

The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this /Oth day of June, 2013.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-13-